CASE 8.—ACTION BETWEEN CORINTHIA G. PLATT'S EXECUTOR AND OTHERS AND EDWARD G. LOCKE AND OTHERS.—June 17, 1910.

## Platt's Exr. v. Locke, &c.

Appeal and cross appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

SAMUEL B. KIRBY, Judge.

From the judgment for the latter the former appeal and the latter cross appeals.—Affirmed.

1.  Wills—Construction—Property Devised—Life Insurance.—A wife gave by will to her husband her property, including her interest in a paid-up policy on the life of the husband, with power to sell and use for his comfort, and asked that the husband dispose of the remainder in accordance with suggestions given him. The husband by will directed that all of his estate, including the policy on his life given to him by the will of the wife, should be converted into money, and should be paid to the relatives of the wife, in accordance with her wishes, providing further, that the will covered no

Platt's Exr. v. Locke, &c.

other part of his property. Held, that the policy was disposed of by the will of the husband, though as a matter of law the policy had not belonged to the wife, but to himself.

2.   Wills—Rights of Beneficiaries—Burden of Proof.—Where a wife gave by will to her husband all her property to sell and convey, and asked that he dispose of the remainder according to her expressed wishes, and the husband by will gave to the heirs of the wife, to carry out her wishes, the part of the estate which he had derived from her, the heirs of the wife must show, not only the property that came to the husband from his wife, but also show what part of it was on hand at his death, and mere proof that under her will there came into his hands about $800, and that he had had at the time of his death $1,225, did not prove, that any part of that money came from his wife.

3.   Wills—Liabilities of Devisees—Incumbrances on Land—Agreement Between Devisee and Mortgagee.—Where a devisee of land incumbered by a mortgage for $1,500 agreed with the holder of the mortgage to hold the property subject to the mortgage for the amount thereof without interest, the holder of the mortgage was not entitled to collect interest against the devisee's estate.

4.   Limitation of Actions—Claim of Mortgagee for Reimbursement of Taxes Paid.—A claim for taxes paid by a mortgagee in a mortgage giving him the right to pay taxes and to obtain a lien therefor is barred by the five-year statute of limitations.

5.   Wills—Liabilities of Devisees—Incumbrances on Land—Assumption of Mortgage Debt—Liability for Taxes.—A devisee of real estate incumbered by a mortgage to secure a debt who agreed with the holder of the mortgage to hold the property subject to the debt without interest, was not chargeable with taxes paid by the holder of the mortgage.

6.   Executors and Administrators—Settlement of Estate—Expenses.—Where a wife by will gave all her property to her husband, and requested him to make a will disposing of any part of the estate left after the payment of her debts and funeral expenses, and the husband in his will directed that, after his debts and funeral expenses were paid, the remainder received by him from the wife, should go to her heirs as requested by her, the costs of settling the estate should be paid out of the funds realized from the property passing to the legatees in his will.

GIBSON, MARSHALL & GIBSON, R. C. KINKEAD and WILLIAM W. CRAWFORD for appellants.

RAY MANN and GEO. CARY TABB for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The questions arising upon this record come up in a suit to settle the estate of M. M. Green, who died in 1908. He was the husband of Millicent P. Green, who died in June, 1905. Neither of them left any children. Mrs. Green in her will, after providing for the payment of her debts, said: "I give all the remainder of my estate of whatever kind, real or personal, including whatever interest I may have in paid up insurance policies on the life of my husband to my husband, the said M. M. Green, with full power to sell, convey, invest and use for his support and comfort in such manner as he may choose, and that no accounting be required of him, and that no inventory or appraisement shall be made of my estate. I ask that my husband make a will disposing of any part of my estate that may be left after the death of my husband and the payment of his just debts and funeral expenses in accordance with the suggestions which I have written and directed to him and which he fully understands." M. M. Green directed that all of his estate, real and personal, of whatever nature, including a policy of insurance on his life in the New England Mutual Life Insurance Company and a policy on his life in the Equitable Life Insurance Company "on both of which policies all premiums are paid and which were given to me by the will of my deceased wife M. P. Green," should be converted into money as soon after his death as possible, without prejudicing its value. After making pro-

visions for the payment of certain specific legacies, he gave the remainder of his estate to the nephews and nieces of his wife, declaring that: "The object of this will is to divide such portion of the estate left me by my deceased wife as may remain at my death in accordance with her wishes, orally expressed but never written. It is not to cover any other property of which I may be possessed." The estate left by Mr. Green consisted of real estate which sold for some $15,000, the two insurance policies mentioned in the will amounting to some $3,000, and $1,225 in money.

It is the contention of the heirs at law of M. M. Green that his object in writing the will was to give to the heirs of his wife only that part of his estate which he derived from her, and that the only part of the estate that came from his wife was the real estate, and therefore, as he died intestate as to the other estate he owned, it passed to them under the law of descent and distribution. It is conceded that the real estate was owned by his wife and devised to him by her will, and so no question is made that the proceeds of it passed under his will to the legatees therein named. So that the controversy between the parties to this litigation grows out of the fact that his heirs at law claim that they are entitled to the proceeds of the insurance policies and the money owned by Mr. Green at his death, while the legatees insist that the insurance policies as well as the money came to Mr. Green from his wife and therefore passed to them under his will. The chancellor held that the legatees were entitled to the money realized from the insurance policies, but that the money on hand was not disposed of by the will and descended to his heirs at law; and in this conclusion we concur.

As it is manifest from the will of M. M. Green that he only intended to give to the legatees therein named such property as he had received from or through his wife, it is insisted by counsel for his heirs at law that, although the will recites that the insurance policies were given to him by the will of his deceased wife, this was a mistake of fact upon his part, as in truth these policies did not belong to his wife, and therefore she could not have given them to him by her will. We do not think it necessary to make any extended analysis of the argument of counsel for the heirs at law in support of this conclusion or the facts upon which it rests. Although there is some ground for the assertion that in declaring in his will that these policies were given to him by his wife, the testator was in fact mistaken, and it may be conceded that, looking at the matter from a strictly legal standpoint, Mrs. Green at her death did not technically have in these policies any interest that could pass by her will to her husband. It is yet manifest from a consideration of the language used in each of the wills that Mrs. Green as well as M. M. Green recognized the fact that these policies were owned by Mrs. Green, and that she gave them by her will to her husband. It thus appears there was some understanding between the parties by which the ownership of these policies was recognized to be in Mrs. Green, and that, if Mr. Green died without disposing of them, they should be given by him to her kindred. The plainly expressed intention of M. M. Green in respect to the disposition of these policies is entitled to more weight than the circumstance that, viewed from a legal standpoint, they did not in fact come to him from his wife. He declares in his will that these policies were given to him by the will of his wife, and this

declaration upon his part is under the facts of this case entitled to controlling weight. The further expression in his will that he disposed of his estate in accordance with the wishes of his wife, orally expressed but never written, indicates very clearly that he and his wife had a distinct understanding with reference to these policies, and that the proceeds of them, if not disposed of by Mr. Green, were to go to his wife's relatives. To say in the face of these solemn declarations of the testator that these policies were not disposed of by his will would be to ignore his plainly expressed intention.

In reference to the money on hand when Mr. Green died, the argument is made by counsel for the legatees that, when Mrs. Green died, she left some $800 in cash, and that they are at least entitled to the amount that is shown by the evidence to have come into the possession of Mr. Green under the will of his wife. There is evidence that Mrs. Green at her death did leave several hundred dollars that passed to her husband under her will, but there is no evidence that any part of this money was on hand when Mr. Green died, or, to put it in another way, it is as fair and reasonable to assume that Mr. Green before his death had used or disposed of the cash left to him by his wife, as to assume that he retained or preserved it. The will of Mrs. Green only imposed upon her husband the obligation of disposing according to the agreement between them of such estate given to him by her as he might have at his death. The will provided that he had full power to sell, use, or dispose of in such manner as he pleased any part or all of the estate devised to him by his wife; the only direction as to its disposition by him being that he should make a will disposing of any part of her es-

tate that might be left at his death. It was therefore incumbent upon the legatees to show not only what property came to Mr. Green from his wife, but also to show what part of this property was on hand at his death. They do show that there came into his hands some $800, but they fail to show that any part of this fund was on hand at his death. The fact that he had $1,225 does not prove that any part of this came to him from his wife. For aught the record shows, he may have spent all that his wife gave him, and have saved after her death out of his own industry and means the money on hand when he died.

Corinthia G. Platt, a sister of Mr. Green, presented claims against his estate for interest on $1,500 for a number of years, and for $808 taxes paid by her for the years 1884-85-86-87. These claims arose in this way: In 1878 Mrs. Green and her husband executed a mortgage on the real estate owned by Mrs. Green and afterwards devised to her husband, to N. Syd Platt, the husband of Corinthia G. Platt, to secure a note for $1,500 payable in three years after date and bearing 6 per cent. interest per annum payable semiannually. After the death of Mrs. Green, M. M. Green individually and as executor, and Corinthia G. Platt, entered into a written agreement, by the terms of which Mrs. Platt waived all claims against the estate of Mrs. Green on account of this mortgage, and, although she still retained the mortgage lien on the property, she agreed to and did look to M. M. Green and the property for the payment of the debt, surrendering all claim against the estate of Mrs. Green. The agreement recites that: ''M. M. Green, brother of said Corinthia G. Platt and sole devisee of said Millicent P. Green, has received the property conveyed by said mortgage subject to said mortgage for

$1,500.00 without interest and has assumed said indebtedness as his individual debt, secured by the lien of said mortgage on the property thereby conveyed." Under this agreement Mrs. Platt expressly surrendered any claim for interest she might have, and Mr. Green only assumed to pay the $1,500 without interest. Counsel for Mrs. Platt seeks to avoid the effect of the condition in this agreement relinquishing any claim for interest upon the ground that the words "without interest" were inserted by mistake on the part of the draughtsman of the paper, and that the contract does not express the true intention of the parties. And, in support of this, a number of reasons are advanced why Mrs. Platt would not have released her claim for interest. We do not, however, think it necessary to spend much time in discussing the contentions of counsel upon this point. The agreement was written by Gov. Willson, who was then a practicing lawyer, it was read to and signed by Mrs. Platt, an intelligent and sensible woman, and the evidence is entirely insufficient to overcome the legal presumption that this paper did not express the true intention of the parties. At the time this agreement was drawn, the $1,500 was an interest-bearing debt, and no possible reason can be assigned for inserting the words "without interest," unless it was the intention of Mrs. Platt, when her brother assumed the payment of the debt, to exonerate him from the payment of any interest then due.

To defeat the claim for taxes, which were paid by the Platts in 1884-85-86-87, the statute of limitations was pleaded. The mortgage executed to secure the $1,500 debt gave the mortgagee the right to pay the taxes and a lien to secure the amount of taxes paid. And there can be no doubt that, if Mrs. Platt had in

seasonable time asserted a lien against the property to secure the amount of taxes paid, it would have been a valid and enforceable lien. But there are two good reasons why the taxes should not be allowed as a claim against the estate of M. M. Green. In the first place, they are barred by the five-year statute of limitations, and, in the second place, there is no evidence that Mr. Green assumed the payment of these taxes. On the contrary, in the agreement by which he assumed the payment of the mortgage debt there is no mention of taxes, and Green only assumed to pay $1,500 on the debt due to Mrs. Platt. If it had been contemplated by the parties that Green was to pay the taxes, there is no reason assigned why mention of this fact should not have been put in the agreement. The argument, however, is made by counsel for Mrs. Platt that, as Green assumed the payment of the mortgage, he also assumed the payment of the taxes which were a part of it. But this theory falls to the ground when we look at the paper and find that the only thing that Green assumed to pay was $1,500.

Counsel for appellees in a cross-appeal insist that the allowance to counsel for appellants as attorneys for the executors was excessive. The reasonableness of the fee allowed by the lower court is confirmed by the affidavits of attorneys qualified to express an opinion as to the amount that should be allowed in cases like this, and we are not disposed to disturb the fee upon the ground that it is excessive.

It is also contended by counsel for appellees that the court erred in charging the costs of the suit to settle the estate against the proceeds of the real estate which M. M. Green received under his wife's will. They insist that these costs should be paid out of the $1,225 in money left by Mr. Green. The will

of Mrs. Green requested her husband "to make a will disposing of any part of my estate which may be left after the payment of my just debts and funeral expenses," and Mr. Green in his will directed, after his debts and funeral expenses were paid, that the remainder of the property received by him from his wife should go as indicated in his will. We are therefore of the opinion that the costs of settling the estate should be paid out of the funds realized from the property that went to the legatees mentioned in the will.

Upon the whole case, we find no reason for disturbing the judgment of the chancellor, and it is affirmed on the original and cross appeals.